**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILDEARTH GUARDIANS<br>P.O. Box 7516<br>Missoula, MT 59807 | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-1408 |
| v. | ) ) | |
| PENNY SUE PRITZKER, in her official capacity<br>as Secretary of Commerce,<br>1401 Constitution Avenue, NW<br>Washington, DC 20230 | ) ) ) ) ) | |
| THE NATIONAL OCEANIC AND<br>ATMOSPHERIC ADMINISTRATION,<br>a federal agency within the U.S. Department of<br>Commerce,<br>1401 Constitution Avenue, NW<br>Washington, DC 20230 | ) ) ) ) ) ) ) | |
| THE NATIONAL MARINE FISHERIES<br>SERVICE, a federal agency within the<br>U.S. Department of Commerce<br>1315 East-West Highway<br>Silver Spring, MD  20910 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

<u>INTRODUCTION</u>

1. Plaintiff WildEarth Guardians ("Guardians") brings this action under the Endangered Species

Act, 16 U.S.C. §§ 1531-44 ("ESA"), to challenge the Secretary of Commerce's and the National

Marine Fisheries Service's ("NMFS's") (collectively "Defendants") failure to take action

required by subsections 4(b)(3)(B) concerning Guardians' petitions to list the five marine species

described below as "threatened" or "endangered" under the ESA. 16 U.S.C. §§ 1533(b)(3)(B).

Each of these species is experiencing population declines and threats to its existence.

2.  Seeking to secure federal protection for the species and their habitats, Guardians petitioned

Defendants to list these five species as "endangered" or "threatened" pursuant to the ESA. In

response to Guardians' petitions NMFS has issued "90-day findings" that the petitions presented

substantial information that listing each of these five species may be warranted. 16 U.S.C. §

1533(b)(3)(A); 79 Fed. Reg. 4877 (Jan. 30, 2014) (Caribbean electric ray (*Narcine bancroftii*))[1];

79 Fed. Reg. 9880 (February 21, 2014) (Hector's dolphin (*Cephalorhynchus hectori*)); 79 Fed.

Reg. 10,104 (blackchin guitarfish (*Rhinobatos cemiculus*) and violinfish (also known as the

common guitarfish) (*Rhinobatos rhinobatos*)); 80 Fed. Reg. 16,356 (March 27, 2015) (porbeagle

shark (*Lamna nasus*)).[2] Within 12 months of receiving the petitions, NMFS was required to

---

[1] NMFS originally issued a negative 90-day finding for the Caribbean electric ray in response to Guardians' petition. 76 Fed. Reg. 15,947 (March 22, 2011). However, Guardians challenged this negative finding in court and, on October 1, 2013, entered into a settlement agreement with NMFS stipulating that the negative finding was remanded to the Agency, and that NMFS would accept a supplemental petition from Guardians within 30 days. WildEarth Guardians v. U.S. Sec'y of Commerce, No. 8:13-cv-00523-VMC-EAJ, Dkt. 33 (M.D. Fla. October 1, 2013) (settlement agreement). The settlement also provided that, within 90 days of receipt of that supplement, if any, NMFS would issue a 90-day finding determining whether the 2010 petition, the 2013 supplement, and the records in the NMFS's files presented substantial scientific or commercial information indicating that the petitioned action may be warranted. NMFS received Guardians' supplement to the petition on October 31, 2013 and made the aforementioned positive 90-day finding on January 30, 2014. See 79 Fed. Reg. 4,877.

[2] Similar to the Caribbean electric ray, NMFS originally issued a negative 90-day finding for the porbeagle shark on July 12, 2010. 75 Fed. Reg. 39,656. Guardians challenged this negative finding in court, and the court remanded the decision to NMFS on November 14, 2014. Humane Soc'y of the U.S. v. Pritzker, 75 F. Supp. 3d 1, 15 (D.D.C. 2014) appeal dismissed, No. 15-5038, 2015 WL 1619247 (D.C. Cir. Mar. 17, 2015). The new 90-day finding was therefore due on February 12, 2015, 90 days after the court order. NMFS issued a positive 90-day finding for the porbeagle on March 27, 2015 (80 Fed. Reg. 16,356), over a month after the deadline.

determine if listing these species was "warranted." 16 U.S.C. § 1533(b)(3)(B). NMFS has not made the required 12-month findings as to these five species in violation of the ESA.

3.  To remedy these violations, Guardians seeks declaratory ruling that the Defendants are in violation of the ESA and the Administrative Procedure Act ("APA") for failure to make 12-month findings on Guardians' petitions to list the Caribbean electric ray, Hector's dolphin, blackchin guitarfish, violinfish, and porbeagle shark, and injunctive relief that establishes dates certain for Defendants to determine if listing these species as endangered or threatened is warranted. Compliance with the nondiscretionary deadlines of the ESA is necessary to ensure the continued existence of these species in the wild.

## JURISDICTION

4.  The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA's citizen suit provision), 5 U.S.C. § 702 (review of agency action under the APA), and 28 U.S.C. § 1331 (federal question jurisdiction).

5. The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701-06; and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

6. Guardians provided 60 days notice of its intent to file this suit pursuant to the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter dated April 27, 2016. Defendants have not remedied the alleged violations. Therefore, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

## VENUE

7. The United States District Court for the District of Columbia is the proper venue for this action pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). The Department of

Commerce's headquarters are located within this district, and a substantial part of the events giving rise to Guardians' claims occurred in this district.

PARTIES

8. PLAINTIFF WildEarth Guardians ("Guardians") is a non-profit corporation headquartered in Santa Fe, New Mexico, with offices in Oregon, Wyoming, California, Colorado, Arizona, and Montana. Founded in 1986, Guardians works to protect and restore wildlife, wild places, wild rivers and health of the American West. Guardians has a long history of working to safeguard imperiled species and ensure they receive the considerable protections afforded by the Endangered Species Act. Guardians submits scientific petitions to list imperiled species under the ESA.

9. Guardians works on behalf of its over 168,000 members and supporters who are concerned with conserving imperiled species, preventing extinction and recovering species facing serious threats including habitat destruction and overutilization, among others. As a result of the serious threats that they face, many marine species face a significant threat of extinction in the short term without significant conservation efforts. However, despite this grave situation, the United States largely fails to protect marine species under the ESA. Of the 2,258 species protected under the Act, only 139 (~6 percent) are marine species. In order to correct this inequity and increase protections for marine species, Guardians began its Wild Oceans campaign. Through the Wild Oceans campaign, Guardians has spent significant resources writing petitions for listing marine species under the ESA, including the petitions that are the subject of this complaint, and undertaking other actions to protect marine species.

10.  For recreational, aesthetic, professional, and scientific activities, Guardians' members and staff visit and enjoy areas where these species live, and will continue to do so. Guardians'

members use these areas to observe wildlife, including these species, for research, nature photography, aesthetic enjoyment, and recreational, educational and other activities. Guardians' members derive aesthetic enjoyment, professional, spiritual, and economic benefit from these species and their habitats. Guardians' members have concrete plans to visit the areas where they can observe these species and will maintain their interest in these species and their habitats in the future.

11.  Guardians' conservation efforts are prompted by concern that the species discussed above are at significant risk of extinction. As discussed above, Guardians sued the National Marine Fisheries Service for its original negative 90-day findings for the Caribbean electric ray and porbeagle shark. See WildEarth Guardians v. U.S. Sec'y of Commerce, No. 8:13-cv-00523-VMC-EAJ, Dkt. 33 (M.D. Fla. October 1, 2013) (settlement agreement in Caribbean electric ray case); Humane Soc'y of the U.S. v. Pritzker, 75 F. Supp. 3d 1, 15 (D.D.C. 2014) appeal dismissed, No. 15-5038, 2015 WL 1619247 (D.C. Cir. Mar. 17, 2015) (decision remanding negative 90-day finding for porbeagle shark). Guardians and its members have a substantial interest in the conservation and recovery of these species and are adversely affected by Defendants' failure to protect the species and their habitats in compliance with the ESA, including NMFS's failure to make 12 month-findings for these species during the intervening several years since Guardians submitted the petitions.

12. Defendants' failure to comply with the ESA's nondiscretionary deadlines for addressing Guardians' petitions deprives these species of statutory protections that are vitally necessary to their survival and recovery. Until these species are protected under the ESA, Guardians' interest in their conservation and recovery is impaired. Therefore, Guardians' members and staff are injured by Defendants' failure to make a timely determination whether listing these species is

warranted and by the harm to the species and their habitats that is ongoing in the absence of such protections. The injuries described above are actual, concrete injuries presently suffered by Guardians and its members, and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction, and the relief sought herein – an order compelling listing decisions for these species – would redress these injuries. Guardians and its members have no other adequate remedy at law.

13. Defendant PENNY S. PRITZKER is the Secretary of Commerce and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations for these species that are required by and are in accordance with the ESA, including listing and critical habitat decisions. Secretary Pritzker is sued in her official capacity.

14. Defendant NATIONAL MARINE FISHERIES SERVICE is the agency within the Department of Commerce that is charged with implementing the ESA for most oceanic species including ensuring prompt compliance with the ESA's mandatory listing deadlines.

<u>LEGAL BACKGROUND</u>

15. The ESA is a comprehensive federal statute that declares that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species …. " <u>Id.</u> § 1531(b).

16. To this end, section 4 of the ESA requires the Secretary to protect imperiled species by listing them as either "endangered" or "threatened." <u>Id.</u> § 1533(a). A "species" includes "any

6

subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." Id. § 1532(16).

17. The ESA's conservation measures apply only after the Secretary lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." Id. § 1536(a)(2). Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species or incidentally taking listed species without a lawful authorization from the Secretary. Id. §§ 1538(a)(1)(B), 1539. Concurrently with listing, the Secretary designates the species' critical habitat, which includes areas that are essential to the conservation of the species. Id. §§ 1532(5)(A), 1533(a)(3)(A). Other provisions of the ESA require the Secretary to "develop and implement" recovery plans for listed species, authorize the Secretary to acquire land for the protection of listed species, and make federal funds available to states to assist in their efforts to preserve and protect listed species. Id. §§ 1533(f), 1534, 1535(d).

18. To ensure the timely protection of species that are at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or threatened. The process includes mandatory, non-discretionary deadlines that the Secretary must meet so that imperiled species receive the ESA's substantive protections in a timely fashion. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination. The Secretary has delegated responsibility for making these findings to NMFS.

19. Upon receiving a listing petition, NMFS must "to the maximum extent practicable, within 90-days" make an initial finding as to whether the petition "presents substantial scientific or

commercial information indicating that the petitioned action may be warranted." Id. §

1533(b)(3)(A). If NMFS finds that the petition does not present substantial information

indicating that listing may be warranted, the petition is rejected and the process ends.

20. If NMFS instead determines that a petition does present substantial information indicating

that listing may be warranted, then the Agency must conduct a full scientific review of the

species' status. Id. Upon completion of this status review, and within 12 months from the date

that it receives the petition, NMFS must make one of three findings: (1) listing is "not

warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other

pending proposals for listing species, provided certain requirements are met. Id. § 1533(b)(3)(B).

21. If NMFS's 12-month finding concludes that listing is warranted, the Agency must publish

notice of the proposed regulation to list the species as endangered or threatened in the Federal

Register for public comment. Id. § 1533(b)(3)(B)(ii). Within one year of publication of the

proposed regulation, the ESA requires NMFS to render its final determination on the proposal.

Id. § 1533(b)(6)(A). At such time, NMFS must either list the species, withdraw the proposed

listing rule, or, if there is substantial disagreement about scientific data, delay a final

determination for up to six months in order to solicit more scientific information. Id. §§

1533(b)(6)(A)(i), (B)(i).

22. Because the ESA does not safeguard a species facing extinction until it is formally listed as

endangered or threatened, it is critical that NMFS meticulously follow the ESA's listing

procedures and deadlines so that such species are protected in a timely manner. Defendants have

regularly ignored these statutory procedures and have consistently missed statutory listing

deadlines.

## FACTUAL BACKGROUND

A. *Narcine bancroftii*—Caribbean electric ray

23. The Caribbean electric ray is a small ray that can reach up to 24 inches (60 centimeters) total

length. It is sandy or brown in color with darker, dusty blotches, and the underside is white to

creamy, sometimes with grey or brown blotches. It has a flattened, oval-shaped disc, large pelvic

fins, and oversized dorsal and caudal fins that cover most of the rear of its tapering tail. The gill

slits are relatively small and there is no spine on the caudal fin. It is a shallow water ray that is

found on soft, sandy substrates from the intertidal zone to depths of 115-180 feet (35-55 meters).

It produces 14-37 volts of electricity that can deliver a small jolt but is not strong enough to harm

humans. It is the only electric ray that inhabits shallow waters along the United States coastline.

Its range is limited to the western Atlantic from North Carolina, through the Gulf of Mexico, the

Caribbean (except for the Bahamas where its presence is unknown), the Lesser and Greater

Antilles, and the north coast of South America. 79 Fed. Reg. 4877, 4879 (January 30, 2014).

24. Due to the threats to the Caribbean electric ray, on September 2, 2010, Guardians submitted a

petition to NMFS to list the Caribbean electric ray as endangered or threatened under the ESA.

The petition was received on September 7, 2010.

25. NMFS made an initial negative 90-day finding on March 22, 2011. 76 Fed. Reg. 15,947.

WildEarth Guardians challenged this negative finding in court and, on October 1, 2013, entered

into a settlement agreement with NMFS stipulating that the negative finding was remanded to it,

and that it would accept a supplement to the 2010 petition within 30 days. See WildEarth

Guardians v. U.S. Sec'y of Commerce, No. 8:13-cv-00523-VMC-EAJ, Dkt. 33 (M.D. Fla.

October 1, 2013) (settlement agreement). The settlement also provided that, within 90 days of

receipt of that supplement, if any, NMFS would issue a 90-day finding determining whether the

2010 petition, the 2013 supplement, and the records in NMFS's files presented substantial

scientific or commercial information indicating that the petitioned action may be warranted.

NMFS received WildEarth Guardians' supplement to the petition on October 31, 2013. <u>See</u> 79

Fed. Reg. 4877 (January 30, 2014). NMFS's subsequent positive 90-day finding concluded that

Guardians' petition presented substantial information to indicate that listing the Caribbean

electric ray may be warranted due to incidental catch. 79 Fed. Reg. at 4882.

26. NMFS was required to make a 12-month finding as to whether listing the Caribbean electric

ray is warranted within 12 months of receipt of Guardians' petition supplement, i.e. by October

31, 2014, but it has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. §

1533(b)(3)(B).

B. *Cephalorhynchus hectori*—Hector's dolphin

27. Hector's dolphin is a coastal species endemic to New Zealand with a discontinuous range

along the Islands' coasts. It is the second most range-limited cetacean in the world. Genetic

testing indicates that the populations on New Zealand's North and South Islands are actually two

subspecies. They are the smallest members of the family Delphinidae, reaching maximum

lengths of 5 feet (1.5 meters) and weights up to 126 pounds (57  kilograms). 79 Fed. Reg. 9880,

9883, 9885 (February 21, 2014). They have a stocky grey and black body with no discernible

beak and a rounded dorsal fin, with a convex trailing edge and undercut rear margin. The main

threat to the species in general is entanglement in gillnets, with amateur gillnetting (as opposed

to commercial gillnetting) being a significant part of the problem.  Trawl fisheries also cause

significant mortality.

28. Due to the threats to the Hector's dolphin, on July 8, 2013, Guardians submitted a petition to NMFS to list the Hector's dolphin[3] as endangered or threatened under the ESA. The petition was received on July 15, 2013.

29. NMFS issued a 90-day finding on Guardians' petition to list the Hector's dolphin on February 21, 2014.[4] The 90-day finding concluded that Guardians' petition presented substantial information to indicate that listing the Hector's dolphin may be warranted due to (1) low abundances and population fragmentation; (2) the ongoing threat of incidental catch; (3) the predicted continued decline in abundance; and (4) the inadequacy of existing regulatory mechanisms. 79 Fed. Reg. 9885-86.

30. NMFS was required to make a 12-month finding as to whether listing the Hector's dolphin is warranted within 12 months of receipt of the 2013 petition, but it has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

C. *Rhinobatos cemiculus*—blackchin guitarfish

31. The blackchin guitarfish occurs in marine and brackish waters in subtropical areas of the Atlantic, from the northern coast of Portugal to Angola, and it is also found throughout coastal Mediterranean waters, though its range appears to have contracted. It lives on the ocean floor over sandy or muddy substrates in shallow waters to about 330 feet (100 meters) depth. Its maximum size varies with males reaching up to 76 inches (192 centimeters) total length and females reaching up to 90 inches (230 centimeters) total length. 79 Fed. Reg. 10,104, 10,112 (February 24, 2014). It has a brown back and white underside with a black blotch on its snout. It

---

[3] The petition to list the Hector's dolphin was part of an 81 species petition. See 79 Fed. Reg. at 9881.

[4] This 90-day finding applied to 5 species from the aforementioned 81 species petition. See 79 Fed. Reg. at 9881; 16 U.S.C. § 1532(16) (defining species as including distinct population segments of species).

has short thorns present on the inner margins of its eye, on its shoulders, and along its spine and tail.

32. Due to the threats to the blackchin guitarfish, on July 8, 2013, Guardians submitted a petition to NMFS to list the blackchin guitarfish[5] as endangered or threatened under the ESA. The petition was received on July 15, 2013.

33. NMFS issued a 90-day finding on Guardians' petition to list the blackchin guitarfish on February 24, 2014.[6] The 90-day finding concluded that Guardians' petition presented substantial information to indicate that listing the blackchin guitarfish may be warranted due to overfishing, which has already caused population declines, decreases in average size, and localized eliminations and due to the inadequacy of existing regulatory mechanisms. 79 Fed. Reg. at 10,112. The species is highly prized for its fins in western Africa leading to heavy fishing pressure.  Pregnant females are targeted for the larger size of their fins and finning of embryos has been reported.

34. NMFS was required to make a 12-month finding as to whether listing the blackchin guitarfish is warranted within 12 months of receipt of the 2013 petition, but it has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

D. *Rhinobatos rhinobatos*—violinfish

35. The violinfish – also known as the common guitarfish – is distributed in the Atlantic from the southern Bay of Biscay southward to Angola, and in the Mediterranean where it prefers the warmer waters of the southern and eastern regions. It lives on the ocean floor in shallow waters in the intertidal zone to depths of 590 feet (180 meters), over sandy, muddy, shell and

---

[5] The petition to list the blackchin guitarfish was part of the aforementioned 81 species petition. 79 Fed. Reg. at 10,104.

[6] This 90-day finding applied to 25 species from the aforementioned 81 species petition.  79 Fed. Reg. 10,104.

occasionally micro-algal covered substrates. 79 Fed. Reg. 10,104, 10,113 (February 24, 2014).

There is limited data available on the species' biology, but it is large and likely has a relatively

unproductive and vulnerable life history. It can grow to a length of about 58 inches

(147 centimeters), but a more normal length is about 30 inches (80 centimeters). It has a khaki-

brown back and white underside. It is very similar in appearance to the blackchin guitarfish

(*Rhinobatos cemiculus*), which shares its distribution, but is generally smaller, has larger eyes,

more widely separated rostral ridges, a longer front nasal lobe and a wider back nasal flap. Off

the west African coasts, this species is taken as bycatch of international shrimp trawl fleets,

bottom trawl cephalopod fisheries and in artisanal gill net fisheries. It is targeted for its meat,

which is salted, dried and exported within the region and its fins are used to supply the Asian fin

trade market.

36. Due to the threats to the violinfish, on July 8, 2013, Guardians submitted a petition to NMFS

to list the violinfish[7] as endangered or threatened under the ESA. The petition was received on

July 15, 2013.

37. NMFS issued a 90-day finding on Guardians' petition to list the violinfish on February 24,

2014.[8] The 90-day finding concluded that Guardians' petition presented substantial information

to indicate that listing the violinfish may be warranted due to (1) the possible extirpation of the

species from portions of the Mediterranean; (2) evidence of population declines in the eastern

Atlantic portion of its range; (3) the continued fishing pressure on the species; and (4) the

inadequacy of existing regulatory mechanisms. 79 Fed. Reg. at 10,113.

---

[7] The petition to list the violinfish was part of the aforementioned 81 species petition. 79 Fed. Reg. at 10,104.

[8] This 90-day finding applied to 25 species from the aforementioned 81 species petition. 79 Fed. Reg. at 10,104.

38. NMFS was required to make a 12-month finding as to whether listing the violinfish is warranted within 12 months of receipt of the 2013 petition, but it has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

E. *Lamna nasus*—porbeagle shark

39. The porbeagle shark is found in the North Atlantic Ocean in the following locations: the Northeast coast of the United States; Newfoundland Banks; Iceland; Barents, Baltic and North Seas; coast of western Europe; and the Mediterranean Sea. In the southern hemisphere, they are distributed in a circumglobal band of temperate waters in the southern Atlantic, southern Indian, southern Pacific, and Antarctic Oceans. The porbeagle does not occur in equatorial waters, but recent evidence shows that mature females migrate to a subtropical pupping ground in the Sargasso Sea in winter. 80 Fed. Reg. 16,356. It has adapted to cold waters in the northern and southern hemisphere through heat exchangers that keep its body warmer than surrounding waters. It is a fast, large shark that can reach 11.6 feet (355 centimeters) total length. Its is dark bluish grey on top and has a white underside. It has a heavy body that is spindle-shaped and it looks fairly similar to a great white shark, with fin placement and dentition being primary differences.

40. Due to the threats to the porbeagle shark, on January 20, 2010, Guardians submitted a petition to NMFS to list the porbeagle shark as endangered or threatened under the ESA. The petition was received on January 22, 2010.

41. NMFS made an initial negative 90-day finding on July 12, 2010. 75 Fed. Reg. 39,656. Guardians challenged this negative finding in court, and the court remanded the decision to NMFS on November 14, 2014. Humane Soc'y of the U.S. v. Pritzker, 75 F. Supp. 3d 1, 15 (D.D.C. 2014) appeal dismissed, No. 15-5038, 2015 WL 1619247 (D.C. Cir. Mar. 17, 2015).

The new 90-day finding was therefore due on Feb. 12, 2015, 90 days after the court's November, 2014 remand. NMFS issued a positive 90-day finding for the porbeagle on March 27, 2015 (80 Fed. Reg. 16,356), over a month after the deadline. NMFS's positive 90-day finding concluded that Guardians' petition presented substantial information to indicate that listing the porbeagle shark may be warranted due to directed and incidental overfishing and population decline. 80 Fed. Reg. at 16,357.

42. NMFS was required to make a 12-month finding as to whether listing the porbeagle shark is warranted within 12 months of the March 17, 2015 court order, but it has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

Violation of the ESA: Failure to Make Timely 12-Month Finding for *Narcine bancroftii*

43. Plaintiff hereby incorporates all preceding paragraphs.

44. NMFS's failure to make a timely 12-month finding on Guardians' petition to list *Narcine bancroftii*-the Caribbean electric ray-as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

SECOND CLAIM FOR RELIEF

Violation of the ESA: Failure to Make Timely 12-Month Finding for *Cephalorhynchus hectori*

45. Plaintiff hereby incorporates all preceding paragraphs.

46. NMFS's failure to make a timely 12-month finding on Guardians' petition to list *Cephalorhynchus hectori*-the Hector's dolphin-as an endangered or threatened species violates

the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

THIRD CLAIM FOR RELIEF

Violation of the ESA: Failure to Make Timely 12-Month Finding for *Rhinobatos cemiculus*

47. Plaintiff hereby incorporates all preceding paragraphs.

48. NMFS's failure to make a timely 12-month finding on Guardians' petition to list *Rhinobatos cemiculus*-the blackchin guitarfish-as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

FOURTH CLAIM FOR RELIEF

Violation of the ESA: Failure to Make Timely 12-Month Finding for *Rhinobatos rhinobatos*

49. Plaintiff hereby incorporates all preceding paragraphs.

50. NMFS's failure to make a timely 12-month finding on Guardians' petition to list *Rhinobatos rhinobatos*-the violinfish-as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

FIFTH CLAIM FOR RELIEF

Violation of the ESA: Failure to Make Timely 12-Month Finding for *Lamna nasus*

51. Plaintiff hereby incorporates all preceding paragraphs.

52. NMFS's failure to make a timely 12-month finding on Guardians' petition to list *Lamna nasus*-the porbeagle shark-as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter Judgment for Plaintiff providing the following

relief:

A. Declare that Defendants violated the ESA and APA by failing to issue timely 12-month

findings whether listing the Caribbean electric ray (*Narcine bancroftii*), Hector's dolphin

(*Cephalorhynchus hectori*), blackchin guitarfish (*Rhinobatos cemiculus*), violinfish (*Rhinobatos

rhinobatos*), and porbeagle shark (*Lamna nasus*)) is warranted;

B. Order Defendants to issue, by dates certain, findings as to whether listing each of the above-

identified five species is warranted, 16 U.S.C. § 1533(b)(3)(B);

C. Grant Plaintiff its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. §

1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D. Provide such other relief as the Court deems just and proper.

Dated: July 6, 2016                         Respectfully submitted


                                   /s/ Sarah K. McMillan_____
                                   Sarah K. McMillan (D.D.C. Bar # CO0057)
                                   WildEarth Guardians
                                   P.O. Box 7516
                                   Missoula, Montana 59807
                                   406.549.3895
                                   smcmillan@wildearthguardians.org